STATE OF CONNECTICUT *v.* MICHAEL REID
(7151)

BORDEN, O'CONNELL and BARRY, Js.

Argued January 19—decision released July 17, 1990

*Denise M. Bourque* and *Giovanna M. Tiberii,* certified legal interns, with whom were *Michael R. Sheldon,* and, on the brief, *Timothy H. Everett* and *Todd D. Fernow,* and *John H. Welsh, Pierre M. Janvier, Carolyn S. Koch,* and *Julie E. Williams,* certified legal interns, for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *Robert A. Lacobelle,* assistant state's attorney, for the appellee (state).

BARRY, J. After a trial to a jury on the charges of murder and possession of a pistol without a permit, the defendant was convicted of the lesser included charge of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (1) and the original charge of carrying a pistol without a permit in violation of General Statutes §§ 29-35 (a) and 29-37 (b). The defendant claims that the trial court (1) failed to reinstruct the jury on the defendant's claim of self-defense, and (2) improperly instructed the jury that it could infer a consciousness of guilt in the defendant from his unexplained flight and failed to instruct the jury in strict

compliance with General Statutes § 54-84 (b).[1] We affirm the trial court's judgment.

The jury could reasonably have found the following facts. In the early morning hours of July 28, 1985, in the Father Panik Village housing project, Bridgeport, the defendant fatally shot Kyle Freeman after an argument between the two young men. After the shooting, the defendant left the scene on a bicycle. The following day he surrendered to the Bridgeport police and gave a statement in which he admitted firing the fatal shots, breaking up the handgun and throwing the pieces in a river.

At trial, the state presented two eyewitnesses. According to these witnesses, the defendant ran after Freeman, who was riding a bicycle, and stopped him in the middle of the street. Then, as Freeman held on to the handlebars, the defendant shot him three times, first in the left leg, then in the right foot, and, finally, in the chest.

I

The defendant first claims that the trial court should have reinstructed the jury, in response to an inquiry, that the state had the burden of disproving, beyond a reasonable doubt, the defendant's claim of self-defense. The note from the jury read as follows: "Request definition of (1) murder; (2) manslaughter first degree, second degree; (3) intentional manslaughter." The court responded to this inquiry by reinstructing the jury on the elements of the crimes of murder, manslaughter in the first degree with intent to cause serious physical injury, manslaughter in the first degree under circumstances evincing extreme indifference to human life

---

[1] Section 54-84 (b) provides in part: "Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify."

and manslaughter in the second degree. It is not a matter of dispute that the trial court properly instructed the jury, prior to commencement of deliberations, on the law relating to self-defense and justification. Nor is it disputed that following receipt of the jury's note of inquiry, the court properly reinstructed the jury on the elements of each of the charges mentioned in the note but did not give a reinstruction on the defense of self-defense or justification.

After reinstructing the jury, the trial court indicated "if you need anything additional, just send out another note."[2] The court then rejected the defendant's request that it reinstruct the jury on the state's burden to disprove the defense of self-defense or justification. The jury rendered its verdict approximately thirty-five minutes after being instructed on the elements of the crimes listed in its first note of inquiry.

The defendant relies on *State* v. *Fletcher,* 10 Conn. App. 697, 525 A.2d 535 (1987), aff'd, 207 Conn. 191, 540 A.2d 370 (1988), which also involved reinstruction of the jury. In *Fletcher,* this court stated: "[W]hen the jury requests clarification or rereading of the charges and simultaneously evinces confusion as to the self-defense claim of the defendant, the trial court is obligated to reinstruct the jury on that defense." Id., 708. In the present case, unlike *Fletcher,* the jury did not evince confusion as to the claim of self-defense.

The requests that went unanswered in *Fletcher* specifically called for further clarification of the law on self-defense. Because the jury in the present case did not ask for a reinstruction on the elements of self-defense

---

[2] The jury sent out a second note which read as follows: "Question: If the jury finds the defendant guilty of a lesser charge than murder, how does the foreman deliver the verdict?" The court did not respond to the note, but did explain the procedure to the jury after it came out of deliberations.

or otherwise evince confusion on the law relating to that defense, the trial court had no duty to reinstruct on the defense. The trial court fulfilled its duty under Practice Book § 864[3] to respond to the jury's request for additional instructions.

## II

The defendant's second claim is that the court's initial charge to the jury was defective in two respects. First, because the defendant did not take the stand in this case, he was entitled to a "no unfavorable inference" instruction and the court did not use the exact language set out in General Statutes § 54-84 in giving this instruction.[4] Second, the court's instruction to the jury concerning the defendant's unexplained flight from the crime scene violated his privilege against self-incrimination.[5] We reject these arguments.

## A

The first part of the defendant's claim addresses the court's failure to adhere to the precise language of General Statutes § 54-84 (b). That statute provides: "Unless

[3] Practice Book § 864 provides: "If the jury, after retiring for deliberations, request additional instructions, the judicial authority, after notice to the parties, shall recall the jury to the courtroom and give additional instructions necessary to respond properly to the request or to direct the jury's attention to a portion of the original instructions."

[4] The following is the relevant portion of the jury charge: "Now, Mr. Reid did not testify in this case and an accused person is under no obligation to become a witness in his own behalf. In our law an accused person may testify or not as he sees fit. It is for the state to prove him guilty of the charges and no burden rests upon him in his [position] as the accused to prove his innocence. There may be many good and sufficient reasons why the accused has not testified, such as advice of counsel. Therefore, you, as a jury, should draw no adverse inferences against the accused merely from his failure to testify."

[5] The portion of the charge to the jury relevant to this claim is as follows: "Now, with reference to the question of whether or not the defendant reasonably believed that his action in firing the weapon was justified

the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify." In its charge to the jury, the court stated that "You, as a jury, should draw no *adverse* inference against the accused *merely* from his failure to testify." (Emphasis added.) The defendant claims that the substitution of "adverse" for "unfavorable" and the addition of "merely" were improper. "[A] claim of trial court noncompliance with § 54-84 (b) is reviewable on appeal even though a defendant, as in this case, did not at trial except to the charge as given." *State* v. *Townsend,* 206 Conn. 621, 625, 539 A.2d 114 (1988).

Failure to follow the exact wording of § 54-84 (b) does not require reversal in all circumstances. *State* v. *Boulware,* 183 Conn. 444, 441 A.2d 1 (1981). "In cases where a no unfavorable inferences charge was given, but in language deviating slightly from the precise

because he reasonably believed that he was threatened with imminent use of deadly physical force as well as to the question of intent, the state urges that the jury consider the flight of the defendant as evidence of the consciousness of the defendant's guilt. There is a principle of law that the unexplained flight of a person accused of a crime is a circumstance which when considered together with all of the facts of the case may justify an inference of the accused's guilt.

"If you find that the defendant had fled from the scene to avoid detection, you might consider this principle which applies when a defendant does an act or action which one can infer that he attempted to avoid detection or facts that would lead to his conviction as being a consciousness of guilt. Of course, you must first conclude that the defendant fled from the scene; that he undertook actions with the intention of avoiding detection.

"No direct explanation was offered as to why the defendant left the scene so, therefore, it is your function to determine whether his leaving the scene was, in fact, to avoid detection. In this regard, you may also consider his admitted course of conduct regarding his destroying of the gun and the throwing of the pieces in the river as weighing on the question of the defendant's consciousness of guilt.

"Now, these are factors you must consider in determining whether or not you feel warranted in drawing an inference of consciousness of guilt on the part of the defendant since his conduct might also be considered by you as being consistent with innocence."

wording of the statute, we have examined the entire charge to see if the words as given were sufficient to satisfy the statute." *State* v. *Sinclair,* 197 Conn. 574, 584 n.11, 500 A.2d 539 (1985). Thus, the trial court's charge was not rendered defective by the substitution of the word "adverse" in lieu of "unfavorable" or by the addition of the word "merely" to the charge. In *State* v. *Boulware,* supra, 447–48, the court held that adding the word "merely" was such a minor departure from the wording of § 54-84 (b) that it did not violate that statute. In *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984), the court held that substituting the word "unreasonable" for "unfavorable" rendered the judgment reversible because it changed the meaning of the sentence. Substituting "adverse" for "unfavorable" is not improper, however, because the terms are synonymous and such a substitution does not change the meaning of the sentence.

## B

The second aspect of the defendant's claim is that the court's instruction to the jury concerning his unexplained flight from the crime scene put the burden of going forward with some evidence on the defendant. The defendant contends that this alleged shifting of the burden violated his privilege against self-incrimination.

The defendant's claim lacks merit. The case he relies upon, *Barnes* v. *United States,* 412 U.S. 837, 846–47, 93 S. Ct. 2357, 37 L. Ed. 2d 380 (1973), expressly held that statutorily created presumptions of fact based on unexplained circumstances do not violate the accused's privilege against self-incrimination. Moreover, the *Barnes* case is not on point because the present case does not involve a statute that creates a presumption of fact from unexplained circumstances.

The trial court properly instructed the jury that an inference of consciousness of guilt was permissible from

the circumstance of the defendant's unexplained flight. The instruction was clear, moreover, that the jurors were equally free to determine that the defendant's flight did not warrant an inference of consciousness of guilt. Evidence of unexplained flight tends to prove consciousness of guilt, and while it does not create a presumption of guilt it may permit an inference of guilt. *State* v. *Piskorski,* 177 Conn. 677, 723, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979).

## III

The defendant contends that the claims discussed in part II, A and B, supra, when considered cumulatively, reveal that the overall impact of the court's jury instruction was sufficiently prejudicial to deprive the defendant of a fair trial and to entitle him to a retrial. In *State* v. *Holloway,* 209 Conn. 636, 652, 553 A.2d 166 (1989), the court held that flight instructions similar to those given in the present case do not violate a defendant's right not to testify under the fifth amendment to the federal constitution or under General Statutes § 54-84 (b). In light of *Holloway,* it is clear that the defendant's claims as to the flight instruction and as to the no adverse inference instruction were separate and distinct claims. For this reason, the defendant's cause does not benefit from considering the claims in conjunction.

The judgment is affirmed.

In this opinion the other judges concurred.