### STATE OF CONNECTICUT *v.* JOHN YURCH
### (14831)

PETERS, C. J., BORDEN, BERDON, NORCOTT and KATZ, Js.

Argued February 18—decision released May 31, 1994

*Stephen R. Park,* special assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, and *Richard Blumenthal,* attorney general, for the appellant (state).

*Louis S. Avitabile,* with whom, on the brief, was *Meryl Anne Spat,* for the appellee (defendant).

NORCOTT, J. The issues raised in this certified appeal are (1) whether our decision in *State* v. *Tatem,* 194 Conn. 594, 483 A.2d 1087 (1984), requires automatic reversal and a new trial when a trial court uses the word "unreasonable" in place of "unfavorable" in a jury instruction issued pursuant to General Statutes § 54-84 (b),[1] and (2) if not, whether the use of the word "unreasonable" in the present case was harmless beyond a reasonable doubt in the context of the jury charge as a whole.

[1] General Statutes § 54-84 provides: "TESTIMONY OR SILENCE OF ACCUSED. (a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

After a jury trial, the defendant, John Yurch, was convicted of one count of offering to make home improvements without a current certificate of registration and three counts of making home improvements without that certificate of registration in violation of General Statutes § 20-427 (b) (5).[2] At trial, the state presented evidence from which the jury could reasonably have found the following facts. On June 11, 1990, the defendant entered into a written agreement with Salvatore and Janice Arena to build a three room addition to their Monroe residence in return for $28,000. On July 31, 1990, the defendant entered into a written agreement with Thomas Story. That agreement provided that the defendant would make home improvements to Story's Woodbury residence in return for $4350. During the period between December, 1990, and

[2] General Statutes § 20-427 (b) provides: "No person shall: (1) Present or attempt to present, as his own, the certificate of another, (2) knowingly give false evidence of a material nature to the commissioner for the purpose of procuring a certificate, (3) represent himself falsely as, or impersonate, a registered home improvement contractor or salesman, (4) use or attempt to use a certificate which has expired or which has been suspended or revoked, (5) offer to make or make any home improvement without having a current certificate of registration under this chapter, (6) represent in any manner that his registration constitutes an endorsement of the quality of his workmanship or of his competency by the commissioner, (7) employ or allow any person to act as a salesman on his behalf unless such person is registered as a home improvement salesman, or (8) fail to refund the amount paid for a home improvement within ten days of a written request mailed or delivered to the contractor's last known address, if no substantial portion of the contracted work has been performed at the time of the request and more than thirty days has elapsed since the starting date specified in the written contract. In addition to any other remedy provided for in this chapter, any person who violates any provision of this subsection shall be fined not more than five hundred dollars or imprisoned for not more than one year or be both fined and imprisoned. Notwithstanding subsection (d) of section 53a-29, if the court determines that a contractor cannot fully repay his victims within the period of probation established in that subsection, the court may impose probation for a period of not more than five years. A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b."

July, 1991, the defendant reshingled the roof, boxed in the chimney and installed soffit vents on Story's house. On October 5, 1990, the defendant entered into a written agreement with Vivian Chabot to remodel the kitchen in her Woodbury residence for the price of $10,500. The defendant performed a portion of the work between January and June, 1991, but did not completely remodel the kitchen. On October 10, 1990, the defendant entered into a written agreement with Fred Thorpe and his wife to build two closets, an office and a bathroom with a whirlpool bath at the Thorpes' Woodbury residence for a price of $27,400. The defendant made those home improvements between November, 1990, and August, 1991.

The state also offered the testimony of Olivia Martinchek, a consumer information representative in the complaint center of the frauds division of the Connecticut department of consumer protection. Martincheck testified that she was the supervisor of the home improvement unit of the frauds division from July, 1985, through December, 1991, and that she was familiar with the procedures by which home improvement contractors were issued certificates of registration. She further testified that she was familiar with the records regarding the defendant's registration as a home improvement contractor in the state of Connecticut. Martinchek testified that the defendant had been registered first on May 20, 1982, with yearly renewals through May 1, 1987, and again on April 1, 1989, through May 1, 1990, but that he had not held a valid certificate of registration at any time thereafter.

After the state had rested its case, the defendant neither presented evidence nor testified. Without presenting a theory of defense to the jury, he elected to rely on the prospect that the state had not carried its burden of proving beyond a reasonable doubt the elements of a violation of § 20-427 (b).

The jury returned a verdict of guilty of all counts. The trial court rendered a judgment of conviction and sentenced the defendant to a term of four years incarceration, suspended after two years, and two years probation with special conditions including payment of $55,419.79 in restitution to the homeowners.

The defendant appealed from the judgment of conviction to the Appellate Court. He claimed that the instruction given by the trial court[3] pursuant to § 54-84 (b) was improper because it allowed the jury to draw any inference, favorable or unfavorable, from the fact that the defendant did not tesify. Relying on *State* v. *Tatem,* supra, 194 Conn. 594, the Appellate Court concluded, in a per curiam opinion, "that the [trial court's] use of 'unreasonable' instead of 'unfavorable' changes the substantive meaning of the statute and is therefore plain error," which error entitled the defendant to a new trial. *State* v. *Yurch,* 31 Conn. App. 688, 690, 626 A.2d 1320 (1993). We granted the state's petition for certification.[4] *State* v. *Yurch,* 227 Conn. 910, 632 A.2d 699 (1993). We now reverse the judgment of the Appellate Court.

---

[3] The relevant portion of the trial court's jury charge reads as follows: "The law does not compel a defendant to take the witness stand and testify, and no presumption of guilt may be raised, and no unreasonable inference may be drawn from the fact that a defendant decides not to testify. You must not permit such a fact to weigh in the slightest degree against the defendant. Nor should it enter your discussions or deliberations. A defendant is not required to establish his innocence. He need not produce any evidence whatsoever if he does not choose to do so. As I have told you already, the burden is on the state to prove a defendant guilty beyond a reasonable doubt. If it fails, a defendant has the right to rely on that failure, and must be of right acquitted."

[4] We granted certification limited to the following issues:

"1. Did the Appellate Court properly reverse the judgment of the trial court by holding that this court's decision in *State* v. *Tatem,* 194 Conn. 594 (1984), establishes that the trial court's use of the word 'unreasonable' in place of 'unfavorable' in instructing the jury under General Statutes § 54-84 (b) automatically requires reversal and a new trial?

"2. If the answer to question 1. is no, was the trial court's misstatement of the word 'unreasonable' in charging the jury under General Statutes

The state claims that the Appellate Court improperly interpreted *State* v. *Tatem,* supra, 194 Conn. 594, as mandating automatic reversal when the word "unreasonable" is used in place of "unfavorable" in a § 54-84 (b) jury instruction. The state argues instead that *State* v. *Tatem,* supra, and its progeny establish that such an improper jury instruction constitutes plain error that may be " 'harmless if, when viewed in the context of the jury charge as a whole, there is no reasonable possibility that the jury was misled. . . .' " Id., 599. We agree with the state.

As a preliminary matter, "we note that we have repeatedly held that a claim of trial court noncompliance with § 54-84 (b) is reviewable on appeal even though a defendant, as in this case, did not at trial except to the charge as given." *State* v. *Townsend,* 206 Conn. 621, 625, 539 A.2d 114 (1988); see Practice Book § 4185. As we have previously explained, "noncompliance with § 54-84 (b) is plain error because the statute serves to effectuate the fundamental right of a defendant not to testify in his criminal trial." *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); see *State* v. *Tatem,* supra, 194 Conn. 595.[5] The defendant's claim therefore was properly before the Appellate Court.

§ 54-84 (b), when viewed in the context of the jury charge as a whole and the evidence in the case, harmless beyond a reasonable doubt?" *State* v. *Yurch,* 227 Conn. 910, 632 A.2d 699 (1993).

Because we conclude that, in the context of the entire jury charge, the trial court's improper use of the word "unreasonable" was harmless beyond a reasonable doubt, we do not reach the state's claim that such an error could be harmless in light of the overwhelming evidence tending to show the defendant's guilt.

[5] The defendant's right not to testify is rooted in the privilege against self-incrimination under both the federal and the state constitutions. " 'The fifth amendment to the United States constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." That provision acts as a restraint upon the individual states as well as the federal government under the fourteenth amendment to the United States constitution. *Malloy* v. *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed.

Whenever a defendant does not testify at trial, § 54-84 (b) requires that, "[u]nless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ." *State* v. *Cobb,* 199 Conn. 322, 324, 507 A.2d 457 (1986) ("it was error for the trial court not to give the charge in the statutory language"). In the present case, the trial court improperly departed from the statutory language. Instead, the trial court instructed the jury as follows: "The law does not compel a defendant to take the witness stand and testify, and no *unreasonable* inference may be raised, and no presumption of guilt may be drawn from the fact that a defendant decides not to testify." (Emphasis added.) The state does not challenge the conclusion of the Appellate Court that the charge did not comply with the requirements of the statute, but argues instead that in light of the entire jury charge the trial court's deviation was harmless.

In *State* v. *Tatem,* supra, 194 Conn. 599–600, we declined to give talismanic effect to the use of the word "unreasonable" in a § 54-84 (b) jury charge. Employing a harmless error analysis, we held that " '[a]n erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury were misled. *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982).' *State* v. *Carrione,* [188 Conn. 681, 685, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 03 S. Ct. 1775, 76 L. Ed. 2d 347 (1983)]. . . . '[W]hether

2d 653 (1963). Article first, § 8, of the Connecticut constitution affords criminal defendants a similar protection in language at least as broad as its federal counterpart. That section, which sets forth the rights of accused persons in criminal prosecutions, provides that "[n]o person shall be compelled to give evidence against himself . . . ." ' *State* v. *Cohane,* 193 Conn. 474, 482, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984)." *State* v. *Sinclair,* supra, 197 Conn. 583 n.10.

a charge is possibly misleading depends on the substance rather than the form of what is said.' *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982)." *State* v. *Tatem,* supra. Furthermore, when a statutory violation implicates the defendant's constitutional right against self-incrimination; see footnote 5; it is the state's burden to prove harmlessness beyond a reasonable doubt. *State* v. *Sinclair,* supra, 197 Conn. 584.[6]

Because the Appellate Court failed to undertake a harmless error analysis in the present case, we now address the state's claim that the erroneous instruction was, in the context of the jury charge as a whole, harmless beyond a reasonable doubt. After applying the above principles to the jury charge as a whole, we conclude that the trial court's failure to follow the literal wording of § 54-84 (b) was harmless.

The defendant argues, on the basis of *State* v. *Tatem,* supra, 194 Conn. 594, that the trial court's improper instruction allowed the jury to draw any inference whatsoever from the defendant's failure to testify, resulting in prejudicial error. The state argues to the contrary that the trial court's misstatement was rendered harmless by the language that immediately followed in the jury charge. Referring to the defendant's failure to testify, the trial court stated immediately

---

[6] Our application of a harmless error analysis is consistent with the basic tenets and goals of our adversarial system of criminal justice. "Indeed, the appellate harmless error doctrine is rooted in [a] fundamental purpose of our criminal justice system—to convict the guilty and acquit the innocent. ' "The harmless error doctrine recognizes the principle that the central purpose of a criminal trial is to decide the factual question of the defendant's guilt or innocence, *United States* v. *Nobles,* 422 U.S. 225, 230 [95 S. Ct. 2160, 45 L. Ed. 2d 141] (1975), and promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." ' *Rose* v. *Clark,* 478 U.S. 570, 577, 106 S. Ct. 3101, 92 L. Ed. 2d 460 (1986), quoting *Delaware* v. *Van Arsdall,* 475 U.S. 673, 681, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986)." *Bunkley* v. *Commissioner of Correction,* 222 Conn. 444, 460, 610 A.2d 598 (1992).

after the erroneous language: "You must not permit such a fact to weigh in the slightest degree against the defendant. Nor should it enter your discussions or deliberations. A defendant is not required to establish his innocence. He need not produce any evidence whatsoever if he does not choose to do so. As I have told you already, the burden is on the state to prove a defendant guilty beyond a reasonable doubt. If it fails, a defendant has the right to rely on that failure, and must be of right acquitted." The defendant concedes that this language standing alone was in substance a proper statement of the principles underlying § 54-84 (b). Nonetheless, he argues that once the erroneous language was uttered by the court, the deviation could be cured only by a specific repudiation. We disagree.

On the basis of the foregoing language, we are persuaded that it was not reasonably possible that the jury would have understood the court to be permitting any inferences whatsoever to be drawn. The language following the improper charge served to alert the jury to the fact that it was to draw no inference whatsoever from the defendant's failure to testify. It is axiomatic that "[a]n instruction prohibiting any inference would also preclude an unfavorable inference." *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985). As a result, despite the trial court's deviation from the statutory language, "the substantive meaning of the statutory requirement was conveyed." Id. We conclude therefore that although the trial court improperly instructed the jury that it could not draw unreasonable inferences from the fact that the defendant did not testify, that misstatement was rendered harmless by the language that immediately followed, completely prohibiting the use of that fact.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to affirm the judgment of the trial court.

In this opinion the other justices concurred.