### STATE OF CONNECTICUT v. ALPHONSO VEGA (11796)

FREEDMAN, SCHALLER and SPEAR, Js.

Argued April 25—decision released September 13, 1994

---

[13] There is no application to confirm the award in the file.

*Maurice H. Hartigan III,* with whom, on the brief, were *Mark R. Carta* and *Pamela J. Zieky,* for the appellant (defendant).

*Nancy L. Gillespie,* deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Elpedio Vitale,* assistant state's attorney, for the appellee (state).

SCHALLER, J. The defendant appeals from the judgment of conviction, rendered after a jury trial, of conspiracy to commit assault in the first degree in violation of General Statutes §§ 53a-48 (a)[1] and 53a-59 (a) (1),[2] attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) (2)[3] and 53a-59 (a) (1), and possession of a weapon or dangerous instrument in violation of General Statutes § 53a-174a (a).[4] The defendant claims that the trial court (1) failed to comply with General Statutes § 54-84 (b),[5] which mandates

---

[1] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[2] General Statutes § 53a-59 (a) provides in pertinent part: "A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . ."

[3] General Statutes § 53a-49 (a) provides in pertinent part: "A person is guilty of an attempt to commit a crime if, acting with the kind of mental state required for commission of the crime, he . . . (2) intentionally does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime."

[4] General Statutes § 53a-174a (a) provides: "A person is guilty of possession of a weapon or dangerous instrument in a correctional institution when, being an inmate of such institution, he knowingly makes, conveys from place to place or has in his possession or under his control any firearm, weapon, dangerous instrument, explosive, or any other substance or thing designed to kill, injure or disable."

[5] General Statutes § 54-84 provides: "(a) Any person on trial for crime shall be a competent witness, and at his or her option may testify or refuse

that the court instruct the jury that it draw "no unfavorable inferences" from the defendant's failure to testify, and (2) improperly instructed the jury, concerning the overt act element of conspiracy, that the court did "believe the state's evidence does point to the fact that the defendant personally committed the act of attempting to cause serious physical injury to the victim by cutting him in the throat area." We reverse the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant was an inmate at the Cheshire correctional center (center) and a member of a gang known as the Latin kings. The victim became an inmate at the center on March 27, 1991, and had previously given a statement to the police implicating certain members of the Latin kings in the crime of which he was convicted. On March 28, 1991, while the victim was eating in the dining hall, one of the Latin kings pointed out the victim to a group of Latin king inmates, including the defendant. The group followed the victim as he left the dining hall. The defendant approached the victim from behind and slashed him in the neck with a weapon created by embedding two razor blades into a plastic toothbrush handle.

At the outset, we note that our Supreme Court has repeatedly held that a claim of noncompliance with § 54-84 (b) is reviewable on appeal even though the defendant, as here, did not submit a request to charge or take an exception to the instruction. *State* v. *Tatem,* 194 Conn. 594, 595, 483 A.2d 1087 (1984); see Prac-

to testify upon such trial. The neglect or refusal of an accused party to testify shall not be commented upon by the court or prosecuting official, except as provided in subsection (b) of this section.

"(b) Unless the accused requests otherwise, the court shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence."

tice Book § 4185; *State* v. *Yurch,* 229 Conn. 516, 521, 641 A.2d 1387 (1994); *State* v. *Townsend,* 206 Conn. 621, 625, 539 A.2d 114 (1988).

In its final charge, the trial court instructed the jury in part that "you, as a jury, *may not draw any unfair inferences* from [the defendant's] failure to testify." (Emphasis added.) Pursuant to § 54-84 (b), "[u]nless the accused requests otherwise, the court *shall instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify.*" (Emphasis added.) "[N]oncompliance with § 54-84 (b) is plain error because the statute serves to effectuate the fundamental right of a defendant not to testify in his criminal trial. *State* v. *Sinclair,* 197 Conn. 574, 582, 500 A.2d 539 (1985); see *State* v. *Tatem,* supra, 194 Conn. 595."[6] *State* v. *Yurch,* supra, 229 Conn. 521; *State* v. *Suplicki,* 33 Conn. App. 126, 128–29, 634 A.2d 1179 (1993); but see *State* v. *Reid,* 22 Conn. App. 321, 327, 577 A.2d 1073, cert. denied, 216 Conn. 828, 582 A.2d 207 (1990) (departure from language of § 54-84 (b) so minor—substitution of "adverse" for "unfavorable"—that deviation "not improper").

The state has conceded that the trial court did not comply with the requirements of § 54-84 (b), but argues

[6] "The defendant's right not to testify is rooted in the privilege against self-incrimination under both the federal and the state constitutions. ' "The fifth amendment to the United States constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' That provision acts as a restraint upon the individual states as well as the federal government under the fourteenth amendment to the United States constitution. *Malloy* v. *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1963). Article first, § 8, of the Connecticut constitution affords criminal defendants a similar protection in language at least as broad as its federal counterpart. That section, which sets forth the rights of accused persons in criminal prosecutions, provides that '[n]o person shall be compelled to give evidence against himself . . . .' " *State* v. *Cohane,* 193 Conn. 474, 482, 479 A.2d 763, cert. denied, 469 U.S. 990, 105 S. Ct. 397, 83 L. Ed. 2d 331 (1984).' *State* v. *Sinclair,* supra, 197 Conn. 583 n.10." *State* v. *Yurch,* supra, 229 Conn. 521–22 n.5.

that, in light of the instructions given to each panel of prospective jurors, the preliminary remarks to the jury upon the completion of jury selection, and the entire final jury charge, the trial court's failure to comply with § 54-84 (b) was harmless.

"[A]n erroneous instruction, even of constitutional dimension, is harmless if, viewed in the context of the charge as a whole, there is no reasonable possibility that the jury were misled. *State* v. *Hines,* 187 Conn. 199, 209, 445 A.2d 314 (1982). *State* v. *Carrione,* [188 Conn. 681, 685, 453 A.2d 1137 (1982), cert. denied, 460 U.S. 1084, 103 S. Ct. 1775, 76 L. Ed. 2d 347 (1983)]. . . . [W]hether a charge is possibly misleading depends on the substance rather than the form of what is said. *State* v. *Kurvin,* 186 Conn. 555, 565, 442 A.2d 1327 (1982). *State* v. *Tatem,* supra, [194 Conn. 599–600]. Furthermore, when a statutory violation implicates the defendant's constitutional right[s] . . . it is the state's burden to prove harmlessness beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Yurch,* supra, 229 Conn. 522–23. "In the present context, the state must show that the charge as given conveyed to the jury the substantive meaning of the statutory requirement. *State* v. *Cobb,* [199 Conn. 322, 325, 507 A.2d 457 (1986)]; *State* v. *Marra,* 195 Conn. 421, 443, 489 A.2d 350 (1985)." *State* v. *Townsend,* supra, 206 Conn. 626; *State* v. *Miller,* 34 Conn. App. 250, 258, 641 A.2d 400, cert. denied, 230 Conn. 902, 644 A.2d 916 (1994).

The defendant argues that the phrase "unfair inference" differs substantially from "unfavorable inference," and that, as a result, the trial court improperly altered the meaning of the statutorily mandated language by affording the jury the opportunity to draw an unfavorable inference from the defendant's failure to testify. The word "unfair" is defined as "unjust";

Merriam-Webster's Collegiate Dictionary (10th Ed.); while "unfavorable" is synonymous with "adverse." *State* v. *Reid,* supra, 22 Conn. App. 327.

"Unfair" and "unfavorable" are not synonyms,[7] and the use of the word "unfair" in place of "unfavorable" conveys a different meaning. The defendant posits, in essence, that the jury reasonably could have been misled to believe that it could draw an unfavorable or adverse inference from his failure to testify if the jury determined that it was fair to draw such an inference in light of the other evidence against him. We agree with the defendant that the use of the word "unfair" imports a meaning different from "unfavorable," and that the use of the word "unfair" in a given context may result in harmful error.

The state argues, however, that the final charge as a whole, as well as instructions to the prospective jury panel and preliminary instructions to the selected and sworn jurors, rendered harmless the trial court's improper instruction, and that the trial court did convey the substantive meaning of the statutory requirement. In its instructions to prospective jurors prior to individual voir dire, the trial court correctly explained that selected jurors could draw no unfavorable inference from the defendant's failure to testify. In its preliminary instructions to the sworn jury, the trial court did not use the exact language of § 54-84 (b), but explained that the defendant had a constitutional right to choose not to take the witness stand or to produce any evidence.

---

[7] We note that the state cites to Webster's Third New International Dictionary, which lists "unfavorable" as an alternate definition, following primary and secondary definitions, for "unfair." This definition, however, is qualified by the italicized phrase "of the wind," which suggests a specialized meaning of the word in a specific context. We do not find the state's argument that the listing of "unfavorable" as an alternate, specialized definition of "unfair" renders the words so close in meaning as to mitigate any possible harmfulness of the trial court's improper instruction.

In the final jury charge, the trial court noted several times that the state maintained the burden of proving that the defendant was guilty beyond a reasonable doubt and mentioned that the defendant did not have to produce any evidence. The trial court, however, specifically discussed the defendant's right not to testify in only the contested portion of the instruction. That section of the instruction provided the following: "Now in this case, the defendant, Mr. Vega, did not testify. And as you have been told, an accused person is under no obligation to become a witness on his own behalf, nor is he obliged to put forth any witnesses on his own behalf. Now, under our law an accused person may testify or not as he sees fit. It is for the state to prove him guilty of the charges beyond a reasonable doubt, and no burden rests upon him in his position as the accused to prove his innocence. Therefore, *you, as a jury, may not draw any unfair inferences from his failure to testify."* (Emphasis added.)

In *State* v. *Yurch,* supra, 229 Conn. 521, the trial court improperly instructed the jury that it could draw no *unreasonable* inference from the defendant's failure to testify. Our Supreme Court determined that this instruction was harmless in light of the language of the charge immediately following the instruction, where the trial court admonished the jury that " '[y]ou must not permit such a fact to weigh in the slightest degree against the defendant. Nor should it enter your discussions or deliberations. A defendant is not required to establish his innocence. He need not produce any evidence whatsoever if he does not choose to do so. As I have told you already, the burden is on the state to prove a defendant guilty beyond a reasonable doubt. If it fails, a defendant has the right to rely on that failure, and must be of right acquitted.' " Id., 524. The court determined that this portion of the charge "served to alert the jury to the fact that it was to draw

*no inference whatsoever* from the defendant's failure to testify"; (emphasis added) id.; and that, therefore, the improper instruction was harmless.

Here, the trial court's final instruction failed to convey the substantive meaning of the statute that the jury could draw no unfavorable inferences from the defendant's failure to testify. The instruction suggested that the jury could draw a fair or just, although unfavorable or adverse, inference from the defendant's failure to testify. Although the trial court instructed prospective jurors that they could draw no unfavorable inference from the defendant's failure to testify, at least one week elapsed between such instructions and the court's final charge. See *State* v. *Walker,* 33 Conn. App. 763, 770–71, 638 A.2d 1084, cert. denied, 229 Conn. 913, 642 A.2d 1207 (1994); *State* v. *Kelly,* 23 Conn. App. 160, 170, 580 A.2d 520 (1990), cert. denied, 216 Conn. 831, 583 A.2d 130, cert. denied, 449 U.S. 981, 111 S. Ct. 1635, 113 L. Ed. 2d 731 (1991) (remarks to prospective jurors "were temporally unconnected to the court's final charge and were totally subsumed by the final charge"). Further, we note that "[w]hen preliminary instructions are given, they 'do not supersede those given after evidence and arguments under our practice.' [*State* v. *Woolcock,* 201 Conn. 605, 623, 518 A.2d 1377 (1986).]" *State* v. *Lewis,* 220 Conn. 602, 614, 600 A.2d 1330 (1991); see also *State* v. *Walker,* supra, 770; *State* v. *Kelly,* supra, 170.

In its final instruction, the trial court charged that the state had the burden of proof and that the defendant did not have to produce any evidence on his behalf. The trial court, however, specifically discussed the defendant's failure to testify only in the context of the improper portion of the instruction. There, the trial court's statement that the jury could draw "no unfair inference" together with the language immediately preceding and succeeding that phrase did not preclude

the jury from drawing inferences regarding the defendant's failure to testify. See *State* v. *Yurch,* supra, 229 Conn. 523–24; see also *State* v. *Marra,* supra, 195 Conn. 443. The trial court, thus, did not convey that the jury could not consider the defendant's silence in its deliberations, and left open the reasonable possibility that the jury would misconstrue the charge and assume that it could draw an inference from the defendant's failure to testify. On the basis of the language employed by the trial court, we conclude that there is a reasonable possibility that the jury was misled to understand the charge to allow it to draw a fair, although unfavorable, inference from the defendant's failure to testify.[8] See *State* v. *Suplicki,* supra, 33 Conn. App. 127–29. The state has not maintained its burden of establishing harmlessness.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[8] Because we reverse the judgment on this ground, we need not reach the defendant's second claim regarding the trial court's instructions on the overt act element of conspiracy, as we cannot state that it is likely to recur upon retrial.