## STATE OF CONNECTICUT *v.* TOREN HICKS
## (AC 25472)

Gruendel, Harper and Hennessy, Js.

Argued May 30—officially released August 29, 2006

*Mark Rademacher*, assistant public defender, for the appellant (defendant).

*Michele C. Lukban,* assistant state's attorney, with whom, on the brief, were *David I. Cohen,* state's attorney, and *Michael A. Colombo, Jr.,* former deputy assistant state's attorney, for the appellant (state).

*Opinion*

HARPER, J. The defendant, Toren Hicks, appeals from the judgment of conviction, rendered after a jury trial, of three counts of sale of narcotics by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), three counts of possession of narcotics in violation of General Statutes § 21a-279 (a) and two counts of sale of narcotics within 1500 feet of a public housing project in violation of General Statutes § 21a-278a (b).[1] The defendant claims that the court violated his fifth amendment right not to testify by failing to instruct the jury, in accordance with General Statutes § 54-84, that it could not draw an unfavorable inference from the fact that he did not testify.[2] We agree and reverse the judgment of the trial court.

The jury reasonably could have found the following facts. In late 2002, the defendant was the subject of an undercover investigation by the Stamford police department. Incident to this investigation, an agent with the federal Bureau of Alcohol, Tobacco and Firearms posed as a purchaser of cocaine. On December 2, 2002, the defendant sold a quantity of crack cocaine to the undercover agent in the parking lot of a restaurant in Stamford for $123. The parking lot was located less than 1500 feet from a public housing project. On December 10,

---

[1] The court sentenced the defendant to serve a total effective term of incarceration of sixteen and one-half years, followed by five years of special parole.

[2] The defendant also claims that he was deprived of a fair trial because of prosecutorial misconduct that occurred during closing argument. In light of our resolution of the defendant's first claim and the fact that the nature of the alleged prosecutorial misconduct claim makes it unlikely that it will arise on retrial, we need not reach this second claim.

2002, the defendant sold a quantity of crack cocaine to the agent in the same parking lot for $120. On December 18, 2002, the defendant sold a quantity of crack cocaine to the agent at a gasoline station in Stamford for $120.

The defendant did not testify at trial. In its jury charge, the court instructed the jury in relevant part as follows: "[W]hen you're deciding the facts, ladies and gentlemen, make sure that you consider them fairly, carefully, find them impartially, impartially without any consideration as to the effect that it may have on anyone who has testified, including the defendant, who didn't testify. You're not to draw any unfavorable inference. But what I'm driving at is, it's your finding of the facts that will control, and you're not to be concerned about punishment in the event of a finding of guilty, you're not to be concerned about what effect, if any, any of the witnesses may have in the final outcome of this case. You find the facts as you find them, fairly and impartially."

The defendant claims that the foregoing instruction did not satisfy the requirement of § 54-84 and that reversal of his conviction is warranted. The defendant argues that it reasonably was possible that the court's instruction misled the jury because it reasonably was possible that the jury would not have understood the instruction to prohibit it from drawing an unfavorable inference from his decision not to testify. The state describes the court's instruction as reflecting a "minor deviation" from the instruction required by § 54-84 and recognizes that the court's instruction did not follow "the exact word order and language of [§ 54-84] . . . ." Nonetheless, the state argues that the court conveyed in substance the necessary instruction. The state also argues that any error was harmless, in part, because of preliminary instructions given to the jury at the beginning of the trial.

The defendant neither took exception to the court's instruction immediately after it was delivered nor requested a no unfavorable inferences instruction by means of a written request to charge. The claim therefore is unpreserved. See Practice Book § 16-20. The defendant requests review of this claim under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We will review the defendant's claim under *Golding* because the record is adequate for review, and the issue is one of constitutional magnitude alleging the violation of a fundamental right. See *State* v. *Giordano-Lanza*, 83 Conn. App. 811, 819–20, 851 A.2d 397, cert. granted on other grounds, 271 Conn. 911, 859 A.2d 572 (2004). As we will explain, the defendant prevails under *Golding* because he has demonstrated that a constitutional violation clearly exists that clearly deprived him of a fair trial, and the state has failed to demonstrate harmlessness of the constitutional violation beyond a reasonable doubt.

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that [unmistakably] deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction. . . . The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result. . . . As long as [the instructions] are correct in law, adapted

to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Citation omitted; internal quotation marks omitted.) Id., 820–21.

"The United States Supreme Court, in *Carter* v. *Kentucky*, 450 U.S. 288, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), discussed the fundamental importance of a no adverse inference instruction and its relation to the constitutional privilege against self-incrimination embodied in the fifth amendment to the United States constitution. The Supreme Court noted that [t]he principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a no adverse-inference jury instruction when requested by a defendant to do so. Id., 300.

"The Supreme Court underscored the significance of such an instruction in light of the tendency of jurors to view a criminal defendant's fifth amendment privilege as a shelter for wrongdoers . . . [and jurors who] too readily assume that those who invoke it are . . . guilty of crime . . . . Id., 302. The court stated that [a] trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum. Id., 303." (Internal quotation marks omitted.) *State* v. *Stewart*, 64 Conn. App. 340, 346–47, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001).

General Statutes § 54-84 (b) provides: "Unless the accused requests otherwise, the court shall instruct the

jury that they may draw no unfavorable inferences from the accused's failure to testify. In cases tried to the court, no unfavorable inferences shall be drawn by the court from the accused's silence." In *State* v. *Suplicki*, 33 Conn. App. 126, 130, 634 A.2d 1179, cert. denied, 229 Conn. 920, 642 A.2d 1216 (1994), this court held that "[t]he unconditional language of the statute is a legislative mandate and the failure to use that language is a pivotal aspect of the defendant's privilege against self-incrimination. The statutory language is based on a constitutional right, and its omission can never be harmless."

"The provisions of § 54-84 (b) are more stringent than the federal or state constitutions require. . . . While the constitutional right to a no adverse inference charge depends upon the defendant's request of such a charge, the statutory right is conferred upon the defendant unconditionally, in the absence of his request that the charge not be given. . . . Our legislature has prescribed the language provided in § 54-84 (b) to be the jury instruction that must be given to reduce speculation to a minimum. . . .

"Our Supreme Court has noted that the legislature, in enacting § 54-84, established a new statutory procedure to protect the rights of those accused persons who choose not to testify. Where the legislature has chosen specific means to effectuate a fundamental right, failure to follow the mandatory provisions of the statute is plain error . . . . Moreover, our Supreme Court has regularly characterized as error any but the most minor departure from the language that § 54-84 (b) requires." (Citations omitted; internal quotation marks omitted.) *State* v. *Stewart*, supra, 64 Conn. App. 347–48.

"Failure to follow the exact wording of § 54-84 (b) does not require reversal in all circumstances. . . . In cases where a no unfavorable inferences charge was

given, but in language deviating slightly from the precise wording of the statute, we have examined the entire charge to see if the words as given were sufficient to satisfy the statute." (Citation omitted; internal quotation marks omitted.) *State* v. *Reid*, 22 Conn. App. 321, 326–27, 577 A.2d 1073, cert. denied, 216 Conn. 828, 582 A.2d 207 (1990). Although a court properly may use the exact language of the statute when delivering the mandatory instruction, the relevant inquiry is whether "[t]he charge clearly informed the jury that it could not use the defendant's silence as a factor in its verdict." *State* v. *Dickerson*, 28 Conn. App. 290, 298, 612 A.2d 769 (1992).

In the present case, the court's no unfavorable inferences instruction was delivered in the context of instructions concerning how the jury was to find facts in general. Thus, the court did not discuss separately the no unfavorable inferences instruction. The court instructed the jury to find facts fairly, carefully and impartially. The court instructed the jury not to consider the effect of its findings upon any person, including the defendant who had not testified. The court then stated that the jury was "not to draw any unfavorable inference." Following this statement, the court stated that the jury was not to be concerned about the punishment that would result in the event it reached a guilty verdict and reiterated that the jury should not consider the effect of its findings on any witness.

The court mentioned the fact that the defendant did not testify in the context of its instruction that the jury should disregard the effect of its findings on any witness. Although it immediately follows mention of the fact that the defendant did not testify, the court's instruction that the jury "not draw any unfavorable inference" appears to be an instruction of general applicability, one that is perhaps related to the several instructions that immediately preceded it. The fact that the court's instruction immediately followed mention

of the fact that the defendant did not testify is not dispositive. The statute requires the court to convey a specific instruction to the jury that no unfavorable inference is to be drawn from the fact that the defendant did not testify. The court's instruction failed to specify from what fact the jury was to draw no unfavorable inference. This renders the instruction inadequate.

We have reviewed the jury charge as a whole. No other instructions or statements in the charge either address the no unfavorable inferences instruction or are relevant to the instruction at issue. Viewing the instruction at issue, as well as the charge as a whole, we are unable to conclude that the court clearly conveyed the substantive meaning of the statutorily prescribed instruction, which is that the jury was not to draw an unfavorable inference from the fact that the defendant did not testify. This is what the statute requires. A defendant is not entitled to jury instructions that either are eloquent or are "as accurate upon legal principles as the opinions of a court of last resort"; (internal quotation marks omitted) *State* v. *Patterson*, 276 Conn. 452, 467, 886 A.2d 777 (2005); but the trial court's instructions must clearly convey to the laypersons of the jury the legal principles which apply. Gauging the likely effect of the instruction on the jury, we conclude that it is reasonably possible that the instruction misled the jury.

The state urges us to consider the likely effect of the court's instruction on the jury in light of the preliminary instructions that the court provided the jury at the beginning of the trial.[3] In its preliminary instructions

[3] The state also argues that relevant to our inquiry is the fact that during voir dire examination, the defendant's counsel discussed the no adverse inferences instruction with each member of the jury and that each member of the jury indicated that he or she would follow such an instruction. That fact is not relevant. General Statutes § 54-84 places an affirmative duty on the court, not counsel, to instruct the jury with regard to the no unfavorable inferences instruction when it must be given.

to the jury, which the court delivered prior to the presentation of evidence and immediately after the jury panel was sworn, the court stated in relevant part: "[T]he state of Connecticut brought the charges against the defendant. I'm going to read those charges to you briefly. The state has the burden of proof. It does not shift to the defendant. The defendant has no obligation to offer any evidence or testimony or to take the [witness] stand, and if he chooses to do neither of those things nor any or all of those, you cannot draw any unfavorable inference against the defendant. That's his constitutional right, to ask the state to prove the charges against him beyond a reasonable doubt. He has pleaded not guilty, he has asked to be tried by a jury. You are the jurors, and you will decide his guilt or innocence."

The state posits that the no unfavorable inferences instruction, provided to the jury prior to the time that the court delivers its charge, may be considered in determining whether it is reasonably possible that a no unfavorable inferences instruction delivered in a court's charge misled the jury. The defendant cites *State* v. *Marra*, 195 Conn. 421, 441–44, 489 A.2d 350 (1985), in support of this proposition. The defendant in *Marra* challenged the court's instruction that the jury draw " 'no inference or taint' " from his failure to testify. Id., 441 n.4. Our Supreme Court concluded that, despite the fact that "this instruction was not in strict compliance with General Statutes § 54-84 (b) in that the word unfavorable was not used, the substantive meaning of the statutory requirement was conveyed." (Internal quotation marks omitted.) *State* v. *Marra*, supra, 443. As the court reasoned, "[a]n instruction prohibiting any inference would also preclude an unfavorable inference." Id. The court went on to "note that in the course of voir dire examination, each and every member of the jury was instructed that the defendant had the right

not to testify and that the jury could draw no unfavorable inference from his exercise of that right. The trial judge repeated this admonition in his remarks to the jury at the commencement of trial. Under these circumstances, we do not find it reasonably possible that the jury was misled by the court's omission of the word unfavorable in its charge." (Internal quotation marks omitted.) Id., 443–44.

In *Marra*, the Supreme Court concluded that the instruction provided in the court's charge satisfied the requirement of the statute. The Supreme Court interpreted the trial court's instruction to preclude any unfavorable inferences being drawn from the defendant's decision not to testify. The fact that the court subsequently noted that other instructions provided to the jury prior to the court's charge properly resembled the language set forth in the statute appears to have been a point of limited significance in the court's analysis. We do not interpret the decision to hold, either implicitly or explicitly, that proper instructions provided prior to the time of the court's charge could satisfy the statutory mandate in their own right or remedy deficient instructions delivered during the court's charge.

Our rejection of the state's reliance on preliminary instructions provided to the jury is reinforced by this court's holdings in *State* v. *Vega*, 36 Conn. App. 41, 646 A.2d 957 (1994), and *State* v. *Stewart*, 60 Conn. App. 301, 759 A.2d 142, remanded, 255 Conn. 913, 763 A.2d 1039 (2000), on remand, 64 Conn. App. 340, 780 A.2d 209, cert. denied, 258 Conn. 909, 782 A.2d 1250 (2001). In *Vega*, this court concluded that the no unfavorable inferences instruction delivered by the court in its charge was deficient. *State* v. *Vega*, supra, 48. The state argued that instructions provided to venirepersons as well as preliminary instructions provided to selected and sworn jurors prior to the presentation of evidence rendered harmless the court's improper instruction. Id.,

46. This court rejected this harmlessness analysis on several grounds. The court reasoned that "[a]lthough the trial court instructed prospective jurors that they could draw no unfavorable inference from the defendant's failure to testify, at least one week elapsed between such instructions and the court's final charge. . . . Further, we note that [w]hen preliminary instructions are given, they do not supersede those given after evidence and arguments under our practice." (Citations omitted; internal quotation marks omitted.) Id., 48.

In *Stewart*, the court failed to deliver a no unfavorable inferences instruction in its charge, and there was no evidence that the defendant had requested such a charge. *State* v. *Stewart*, supra, 60 Conn. App. 308–309. The state argued, however, that the court did not totally omit such an instruction in the case because "the court told the two venire panels from which the jury subsequently was drawn that the jury could not draw any unfavorable inference in the event that that the defendant chose not to testify." Id., 309.

This court rejected on several grounds the state's claim that the court's statements to the venire panels satisfied the legislature's mandate. The court stated: "First, § 54-84 is set in the context of the *trial*. The trial of a jury case commences when a jury panel is selected and sworn . . . . The statute obviously refers to the jury instructions that are to be given at the end of the trial. Second, the statute directs the court to instruct the *jury*. The pool of venirepersons from which the jury is drawn is not the trial jury. Third, prior to the trial, the court does not know whether the defendant will testify. Finally, the preliminary instructions were given at least two weeks prior to the jury instructions at the end of the evidence. As a practical matter, the legislature could not have intended that such instructions would comply with the dictates of § 54-84." (Citations omitted; emphasis in original.) Id., 309–310.

To the extent that the state relies on the importance of the preliminary instructions provided after the jury was seated and sworn, rather than instructions given by the court to venirepersons, the rationale set forth in *Vega* and *Stewart* defeats its argument. Here, the court provided preliminary instructions to the jury several days prior to the time it delivered its jury charge. At the time that it delivered its preliminary instructions, the court obviously was unable to state with certainty whether the defendant would exercise his right not to testify during the evidentiary phase of the trial. General Statutes § 54-84 (a) provides that "[t]he neglect or refusal of an accused party to testify shall not be commented upon by the court . . . except as provided in subsection (b) of this section." The instruction set forth in subsection (b) provides that the court shall instruct the jurors "that they may draw no unfavorable inferences from the accused's *failure to testify*." (Emphasis added.) General Statutes § 54-84 (b). This language reflects that the instruction is mandatory in cases in which the defendant does not take the witness stand and that the instruction should address this *actuality*. Stated otherwise, an instruction that addresses the *possibility* that a defendant may elect not to testify, such as the one that the court provided to the jury prior to the presentation of evidence, is not the instruction set forth in the statute. For these reasons, we are unpersuaded that the deficient instruction delivered by the court in its charge was clarified or otherwise remedied by its preliminary instruction at the beginning of the trial. The state has failed to demonstrate that the court's instructional error was harmless.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.