## State of Connecticut *v.* Charles L. Ross
## (6646)

Borden, Daly and Foti, Js.

Argued February 1—decision released May 23, 1989

*Mark Rademacher,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,* state's attorney, and *C. Robert Satti, Jr.,* assistant state's attorney, for the appellee (state).

DALY, J. The defendant appeals from the judgment rendered after a jury trial convicting him of manslaughter in the first degree in violation of General Statutes § 53a-55 (a) (3).[1] He claims that the trial court erred (1) in denying his motion to suppress certain statements he had made to police and his motion to suppress the gun seized as a result of a warrantless arrest and inadequate *Miranda*[2] warnings, (2) excluding evidence concerning third party culpability for the crime, and (3) in restricting his closing argument. We find error.

The jury could reasonably have found the following facts. On the evening of December 26, 1986, the victim, a student at the University of Bridgeport, was working as a bouncer at the Austin Street Cafe in Bridgeport. The cafe catered primarily to the college students in the area. On that evening, the defendant and a companion entered the cafe. Shortly before 10:30 p.m., the defendant's companion and the victim became engaged in a heated argument because the victim refused to permit him to leave the cafe with a beer bottle. The defendant did not participate in this exchange, but rather urged his companion to leave the premises. After both the defendant and his companion were asked to leave the cafe, the companion slammed his beer bottle on a table. The defendant left the cafe, followed by his companion and the victim. Within eight to ten seconds after the departure of the defendant and his companion, the victim, who was standing in the cafe doorway, was shot in the chest. The victim died at the hospital shortly thereafter.

---

[1] General Statutes § 53a-55 provides in pertinent part: "(a) A person is guilty of manslaughter in the first degree when: . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] *Miranda* v. *Arizona,* 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

At approximately 8:30 p.m. on December 27, 1986, Jose Burgos-Ortiz arrived at the Bridgeport police headquarters and made a statement in which he stated that he had been with the defendant at the Austin Street Cafe the previous night and that the defendant had shot the victim. On the basis of this statement, three Bridgeport police detectives proceeded to the defendant's apartment. Although the police did not have an arrest warrant, the defendant was arrested in his home, and he received a partial recitation of his *Miranda* rights.[3] Following his arrest, a detective asked the defendant whether he owned a gun. He replied that he did and, in response to the inquiry concerning its location, he stated that the gun was under his bed mattress. One of the detectives retrieved the .38 caliber pistol. At trial, one of the state's experts testified that the bullet extracted from the victim's chest was fired from the defendant's pistol, while another of the state's experts testified that he was unable to make any conclusion linking the gun and the bullet.

The defendant was taken to police headquarters where, at approximately 10:15 p.m., he was fully advised of his *Miranda* rights. The defendant denied, both orally and in writing, that he had been in the Austin Street Cafe the previous evening. He stated that he had gone to visit his daughter in Buffalo, New York, but had gotten lost and eventually had returned home. The defendant, who had a valid city gun permit, admitted that he was carrying his pistol that evening.

At approximately midnight, the detectives arranged a confrontation between the defendant and Burgos-Ortiz, who was still at police headquarters. Burgos-Ortiz accused the defendant of shooting the victim; the defendant denied being with Burgos-Ortiz the previous evening.

---

[3] The defendant was advised only that he had a right to an attorney and a right to remain silent.

The following day, December 28, 1987, the defendant made a second statement to the police. In this statement, he indicated that on December 26, 1987, he had been drinking heavily after leaving work early. He also stated that he had been wearing his pistol in a holster that night. He recalled drinking in several bars with Burgos-Ortiz but remembered nothing of the dispute in the Austin Street Cafe. The next thing he remembered was waking up in a car being driven by Burgos-Ortiz on the New Jersey turnpike. When he awoke, he found his gun in the jacket he was wearing, which belonged to Burgos-Ortiz. The two drove to the home of Burgos-Ortiz' sister in Camden, New Jersey. While there, the defendant gave his gun to Burgos-Ortiz, who wanted to clean it. Prior to handing the gun over, the defendant extracted four live bullets and one shell. The defendant and Burgos-Ortiz returned to Bridgeport shortly thereafter.

Burgos-Ortiz disappeared from Bridgeport after leaving police headquarters on the night of December 27, 1987. He never reported back to work or to his probation officer.[4] The police made several inquiries as to his whereabouts, but were unable to locate him.

I

The defendant first claims that the trial court erred in refusing to suppress the oral statements made by him at his apartment and the .38 caliber pistol seized as a result of those statements. He claims that both should have been suppressed because they followed an illegal warrantless arrest made in violation of his federal[5] and state[6] constitutional rights. He also claims the statements should have been suppressed because

---

[4] Burgos-Ortiz was on probation in December, 1987, pursuant to the conditions imposed in a 1985 sentence.

[5] U.S. Const., amend IV.

[6] Conn. Const., art. I, § 7.

they followed inadequate *Miranda* warnings, in violation of his rights under the fifth and fourteenth amendments to the United States constitution.

We turn first to the defendant's fifth amendment claim. The trial court denied the motion to suppress the statements and the gun, finding that the statements were not taken in violation of *Miranda*, and that they were voluntarily made. Thus, the question for our review is whether the trial court's decision was clearly erroneous in light of the evidence in the whole record. Practice Book § 4061; *State* v. *Enright,* 17 Conn. App. 142, 146, 550 A.2d 1095 (1988).

It is by now axiomatic that, prior to any custodial interrogation, a suspect must be warned that he has a right to remain silent, that any statements he does make can be used as evidence against him, that he has a right to the presence of an attorney and that if he is indigent, an attorney will be appointed to represent him. *Miranda* v. *Arizona,* 384 U.S. 436, 444, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). In *Miranda,* the court held that the fifth amendment requires the exclusion of any statement made by an accused during custodial interrogation, unless he has been advised of these four rights and has voluntarily waived them. Id.

In *State* v. *Gray,* 200 Conn. 523, 531, 512 A.2d 217, cert. denied, 479 U.S. 940, 107 S. Ct. 423, 93 L. Ed. 2d 373 (1986), our Supreme Court followed the dictates enunciated in *California* v. *Prysock,* 453 U.S. 355, 359, 101 S. Ct. 2806, 69 L. Ed. 2d 696 (1981), and recognized that although deviation from the express language of *Miranda* may be tolerated in a warning, a suspect must nevertheless receive a fully effective equivalent of the four essential warnings.

It is clear from the record in the present case that the defendant did not receive the four essential *Miranda* warnings or a fully effective equivalent

thereof.[7] We recognize that federal cases have held that the failure to include one of the four essential *Miranda* warnings does not constitute a per se fifth amendment violation. See *Michigan* v. *Tucker,* 417 U.S. 433, 444, 94 S. Ct. 2357, 41 L. Ed. 2d 182 (1974) (defendant never informed that an attorney would be appointed for him if he could not afford one). In the present case, however, the defendant was not informed of his right to have appointed counsel present before and during any questioning nor was he informed of the consequences of waiving his right against self-incrimination. Both of these warnings have been held to be required in order to comply with *Miranda*. See *Estelle* v. *Smith,* 451 U.S. 454, 467, 101 S. Ct. 1866, 68 L. Ed. 2d 359 (1981) (defendant never informed of his right to remain silent, which violated his fifth amendment rights); *Eagan* v. *Duckworth,* 843 F.2d 1554, 1557 (7th Cir.), cert. granted, 488 U.S. 888, 109 S. Ct. 218, 102 L. Ed. 2d 209 (1988) (defendant never informed of right to presence of counsel during questioning). The objective of *Miranda* warnings is not to mold police conduct for its own sake; the purpose of the warnings instead is to dissipate the compulsion inherent in custodial interrogation and, in doing so, guard against abridgement of a suspect's fifth amendment rights. *Moran* v. *Burbine,* 475 U.S. 412, 425, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986). Clearly, the warning that the defendant received was not a mere deviation from the language of *Miranda*. Rather, there was a total absence of two essential warnings. On the basis of our review of the record, we conclude that the trial court erred in finding that the defendant had been fully advised of his constitutional rights. Accordingly, the court erred in failing

[7] There is no question that the defendant was subjected to custodial interrogation, thereby necessitating the warnings. See *Orozco* v. *Texas,* 394 U.S. 324, 89 S. Ct. 1095, 22 L. Ed. 2d 311 (1969) (*Miranda* warnings required when defendant is questioned in his own home and he was not free to leave.)

to suppress the defendant's statements made at his apartment about the existence and location of his gun.

We also find error in the court's failure to suppress the gun seized at the defendant's apartment. Because the gun was seized as a direct result of the defendant's statements, which we hold should have been suppressed, the gun likewise should have been suppressed. See *United States* v. *Lee,* 699 F.2d 466, 468 (9th Cir. 1982); *United States* v. *Downing,* 665 F.2d 404, 409 (1st Cir. 1981); *United States* v. *Guarino,* 629 F. Sup. 320, 326 (D. Conn. 1986).[8]

The erroneous denial of the defendant's motion to suppress requires us to reverse his conviction and remand the case for a new trial. Because they are likely to arise at a new trial, we also must address the defendant's remaining claims.

## II

We first consider the defendant's claim that the trial court erred in excluding evidence that a third party, namely Burgos-Ortiz, could have committed the crime.

In his offer of proof, the defendant sought to introduce direct evidence through numerous witnesses that Burgos-Ortiz had lived in Bridgeport for a substantial period of time prior to the shooting and that he left town suddenly one day after the crime. He also sought to introduce evidence that Burgos-Ortiz had been involved in an altercation in another bar one week prior to the shooting and that, in that incident, Burgos-Ortiz had been seen with a handgun and the defendant had intervened in the fight. The court excluded the evidence on the grounds of relevance.

---

[8] Because we hold that the gun and statements should be suppressed under the fifth amendment, it is unnecessary for us to consider the defendant's fourth amendment claims.

" 'A defendant's right to present witnesses and offer evidence is a fundamental element of due process of law. . . . Both this state and other jurisdictions have recognized that a defendant may introduce evidence which indicates that a third party, and not the defendant committed the crime with which the defendant is charged. . . . The defendant, however, must show some evidence which directly connects a third party to the crime with which the defendant is charged. . . . It is not enough to show that another had the motive to commit the crime . . . nor is it enough to raise a bare suspicion that some other person may have committed the crime of which the defendant is accused. . . .' (Citations omitted.) *State* v. *Echols,* 203 Conn. 385, 392, 524 A.2d 1143 (1987)." *State* v. *Holeman,* 18 Conn. App. 175, 182, 556 A.2d 1052 (1989).

The admissibility of evidence of third party culpability is governed by the rules of relevancy, and the trial court has broad discretion in ruling on such questions. Id. Unless the court has abused its discretion or injustice appears to have been done, the ruling will be upheld. Id.

The defendant argues that Burgos-Ortiz' involvement in a similar incident in a bar one week prior to the Austin Street Cafe shooting and Burgos-Ortiz' unexplained flight from the area after implicating him in the crime, taken together with the other evidence in the case arguably linking Burgos-Ortiz to the crime, constituted sufficient evidence to connect Burgos-Ortiz directly to the crime. Accordingly, he argues, the evidence should have been admitted. We agree. Taken together with the other evidence in the case, the proffered evidence showed more than mere motive or a bare suspicion that Burgos-Ortiz may have committed the crime. " 'Evidence is admissible when it tends to establish a fact in issue or to corroborate other direct evidence in the case. . . . "One fact is relevant to another fact when-

ever, according to the common course of events, the existence of one, taken alone or in connection with other facts, renders the existence of the other either certain or more probable. . . . " ' " (Citations omitted.) *State* v. *Echols,* supra, 393.

In the present case, justice requires that the proferred evidence be admitted on the remand. In this case, there were no eyewitnesses to the crime other than Burgos-Ortiz. The jury heard evidence that Burgos-Ortiz was with the defendant at the scene of the crime and had started the argument that led to their expulsion from the bar immediately before the shooting. The jury also heard the testimony of one Bridgeport police officer regarding the department's attempts to locate Burgos-Ortiz. Once that evidence was adduced, however, the rules of relevancy dictated that the defendant's evidence be admitted, as the proferred evidence rendered Burgos-Ortiz' culpability for the crime more probable. Accordingly, the evidence would have aided the jury in determining whether the state had proven its case against the defendant beyond a reasonable doubt. Thus, the court erred in refusing to allow the defendant to present this evidence.

## III

Finally, we consider the defendant's claim that the trial court impermissibly restricted his closing argument and therefore abridged his right to present final argument. The defendant attempted to argue to the jury that the failure of Burgos-Ortiz to testify could be the source of a reasonable doubt. The defendant, however, did not attempt to argue a *Secondino* inference.[9] The trial court ruled that the defendant could argue

[9] See *Secondino* v. *New Haven Gas Co.,* 147 Conn. 672, 674–76, 165 A.2d 598 (1960) (the failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him permits the inference that the evidence of the witness would be unfavorable

that a reasonable doubt could be based upon a lack of evidence but that, in making such an argument, he could not mention Burgos-Ortiz. The defendant argues on appeal that the court's ruling was erroneous. Under the circumstances of the case, we agree.

"Counsel may comment upon facts properly in evidence and upon *reasonable* inferences to be drawn from them. *State* v. *Kinsey*, 173 Conn. 344, 348, 377 A.2d 1095 (1977). Counsel may not, however, comment on or suggest an inference from facts not in evidence. *State* v. *Manley*, 195 Conn. 567, 580, 489 A.2d 1024 (1985). In general, the scope of final argument lies within the sound discretion of the court; *Schwarz* v. *Waterbury Public Market, Inc.*, 6 Conn. App. 429, 437, 505 A.2d 1272 (1986); subject to appropriate constitutional limitations. *Herring* v. *New York*, 422 U.S. 853, 95 S. Ct. 2550, 45 L. Ed. 2d 593 (1975) (complete denial of right to argue violates sixth amendment)." (Emphasis in original.) *State* v. *Huff*, 10 Conn. App. 330, 340–41, 523 A.2d 906, cert. denied, 203 Conn. 809, 525 A.2d 523 (1987).

In order to prove guilt beyond a reasonable doubt, the state must produce evidence that precludes every reasonable hypothesis of innocence, is consistent with guilt and is inconsistent with any other rational conclusion. *State* v. *Kluttz*, 9 Conn. App. 686, 706, 521 A.2d 178 (1987). We note that, in final argument, the state is entitled to comment on the weakness of the defendant's case by bringing to the jury's attention the accused's failure to call witnesses to contradict the factual character of the state's case, or his failure to sup-

to the party's cause). This rule also applies in criminal cases. *State* v. *Annunziato*, 169 Conn. 517, 536, 363 A.2d 1011 (1975). A *Secondino* inference would not have been proper in the present case because one of the requirements is that the witness be available. *Seperack* v. *Solaz*, 17 Conn. App. 684, 689, 556 A.2d 175 (1989). Clearly, Burgos-Ortiz was not available.

port his own factual theories with witnesses. Id. These comments fall within the bounds of legitimate final argument provided they do not indirectly and impermissibly call into question the defendant's decision not to testify. Moreover, these comments do not fall within the ambit of a *Secondino* inference argument. See *State v. Magnotti,* 198 Conn. 209, 220, 502 A.2d 404 (1985); *State v. Kluttz,* supra; *State v. Allen,* 9 Conn. App. 169, 178–80, 517 A.2d 1043 (1986), rev'd on other grounds, 205 Conn. 370, 533 A.2d 559 (1987).

Although it is true that in a criminal prosecution the state bears the burden of proof and the defendant need prove nothing, the trial court must exercise caution in restricting a defendant's right to argue about reasonable doubt. The lack of evidence, for whatever reason, creates an inference of reasonable doubt. See D. Borden & L. Orland, Connecticut Criminal Jury Instructions § 2.9, p. 51. Just as the state may comment on the weakness of the defendant's case due to his failure to call witnesses, so too should the defendant be permitted to argue to the jury concerning the inference of reasonable doubt that can be drawn from the lack of evidence. See *United States v. Keplinger,* 776 F.2d 678, 702–703 (7th Cir. 1985); *United States v. Mahone,* 537 F.2d 922, 927–28, cert. denied, 429 U.S. 1025, 97 S. Ct. 646, 50 L. Ed. 2d 627 (7th Cir. 1976). While we are sensitive to the discretion of the trial court in limiting argument to the actual issues of the case, tight control over argument is undesirable when counsel is precluded from raising a significant issue. *United States v. Mahone,* supra. Under the facts of this case, the trial court erred in restricting the defendant's final argument. On the state's theory of the case, Burgos-Ortiz was the sole eyewitness to the shooting. On remand, the defendant should be permitted to refer to the

absence of Burgos-Ortiz' testimony in his comments on the reasonable doubt raised by a lack of evidence in the case.

There is error, the judgment is set aside and the case is remanded for a new trial.

In this opinion the other judges concurred.