## STATE OF CONNECTICUT *v.* TENG BUNLEUT
### (AC 23425)

Dranginis, Flynn and McDonald, Js.

Argued January 22—officially released May 4, 2004

*Maria A. Cahill*, with whom was *Carlos E. Candal*, for the appellant (defendant).

*Howard S. Stein*, assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, *Joseph P. Harry*, senior assistant state's attorney, and *Brian King*, law student intern, for the appellee (state).

*Opinion*

MCDONALD, J. The defendant, Teng Bunleut, appeals from the judgment of conviction, rendered after a jury trial, of carrying a pistol without a permit in

violation of General Statutes § 29-35 (a).[1] On appeal, the defendant claims that (1) the assistant state's attorney engaged in misconduct during closing argument and (2) the trial court improperly instructed the jury on the charge of carrying a pistol without a permit. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. During the early morning hours of June 3, 2001, the defendant and his cousin drove to the Golden Bamboo Restaurant in Bridgeport. As the defendant later told the police, he was in possession of a nine millimeter handgun that night, and he did not have a permit for the gun. While at the restaurant, Chandra Sam and Buntham Sam approached the defendant, asked him if he was from Danbury and if he had attended a wedding two months earlier. The defendant had attended a wedding at the restaurant approximately two and one-half months earlier when, during an altercation, Buntham Sam and Chandra Sam fired gunshots at the defendant and his friends. The Sams repeatedly asked the defendant to go outside, which the defendant refused to do.

The defendant told the police that when the restaurant closed he had gone outside, where the Sams started shooting at him. The defendant stated that he then began to fire his pistol at the Sams. The defendant then entered a vehicle and left with the gun. When the police stopped the vehicle, they found the nine millimeter handgun that was used to wound the Sams and another person. In the parking lot of the restaurant, the police collected twenty-three shell casings, some of which came from the nine millimeter handgun that was recovered from the defendant's vehicle.

[1] The defendant was acquitted of one count of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (1) and two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (5).

I

The defendant claims that the assistant state's attorney engaged in misconduct during closing argument. The defendant failed to make that claim at trial and now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).[2]

"[W]e consider it highly significant that defense counsel failed to object to any of the improper remarks, request curative instructions, or move for a mistrial. Defense counsel, therefore, presumably [did] not view the alleged impropriety as prejudicial enough to jeopardize seriously the defendant's right to a fair trial. . . . Given the defendant's failure to object, only instances of *grossly egregious misconduct* will be severe enough to mandate reversal." (Citation omitted; emphasis added; internal quotation marks omitted.) *State* v. *Thompson*, 266 Conn. 440, 479–80, 832 A.2d 626 (2003).

"Prior to analyzing the defendant's specific claims of prosecutorial misconduct, we set forth the well established principles that guide our inquiry as to all of his claims. To prove prosecutorial misconduct, the defendant must demonstrate substantial prejudice. . . . In order to demonstrate this, the defendant must establish that the trial as a whole was fundamentally unfair and that the misconduct so infected the trial with unfairness as to make the conviction a denial of due process. . . . [I]t is not the prosecutor's conduct alone that guides

[2] Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

our inquiry, but, rather, the fairness of the trial as a whole." (Citation omitted; internal quotation marks omitted.) *State* v. *Coney*, 266 Conn. 787, 806–807, 835 A.2d 977 (2003).

"Moreover, in analyzing claims of prosecutorial misconduct, we engage in a two step analytical process. The two steps are separate and distinct: (1) whether misconduct occurred in the first instance; and (2) whether that misconduct deprived a defendant of his due process right to a fair trial. Put differently, misconduct is misconduct, regardless of its ultimate effect on the fairness of the trial; whether that misconduct caused or contributed to a due process violation is a separate and distinct question that may only be resolved in the context of the entire trial . . . ." (Internal quotation marks omitted.) Id., 808.

"As we previously have recognized, prosecutorial misconduct of a constitutional magnitude can occur in the course of closing arguments." (Internal quotation marks omitted.) *State* v. *Thompson*, supra, 266 Conn. 458.

"In determining whether prosecutorial misconduct was so serious as to amount to a denial of due process, this court, in conformity with courts in other jurisdictions, has focused on several factors. . . . Included among those factors are the extent to which the misconduct was invited by defense conduct or argument . . . the severity of the misconduct . . . the frequency of the misconduct . . . the centrality of the misconduct to the critical issues in the case . . . the strength of the curative measures adopted . . . and the strength of the state's case. . . .

"Just as the prosecutor's remarks must be gauged in the context of the entire trial, once a series of serious improprieties has been identified we must determine whether the totality of the improprieties leads to the

conclusion that the defendant was deprived of a fair trial. . . . Thus, the question . . . is whether the sum total of [the assistant state's attorney's] improprieties rendered the defendant's [trial] fundamentally unfair, in violation of his right to due process. . . . The question of whether the defendant has been prejudiced by prosecutorial misconduct, therefore, depends on whether there is a reasonable likelihood that the jury's verdict would have been different absent the sum total of the improprieties." (Citations omitted; internal quotation marks omitted.) Id., 460.

The following facts are relevant to our resolution of the defendant's claim. During his rebuttal argument, the assistant state's attorney stated: "[The defendant] cooperated with the police. How's he going to deny the fact [that he] just left the [restaurant], the shooting, here's a gun, what's he going to deny, [that] it was his? First of all, he's caught with it, so he makes the story. Here's a story, they were shooting at me, but no one had produced anything about a previous shooting. Was it reported? No, I didn't report it the last time, I think someone else did. You'll see that in his statement [to the police].

"Come on? Is that reasonable? You're going to go back to the same place that someone shot at you two months earlier? Or, are you going to go back there armed, looking for revenge? This time they won't catch me the second time. This time I'll have a gun. He couldn't tell the officers, hey, you know, I went back for revenge and I shot them, I'm going—yes, and I'm going to plead guilty to the assaults. He can't say that. So, he says, well, they threatened me while I was there, so being that I put myself into this situation, being that I came from Danbury with a gun, I wasn't going to let them get away with it."

The defendant did not object, but the court, at that point, interrupted the assistant state's attorney, ques-

tioning whether the comments were proper argument. The assistant state's attorney informed the court that he was referring to the defendant's statement, which had been admitted into evidence. The court then cautioned the jury: "[I]f it's not in that statement, counsel cannot remark—attribute any remarks to an accused person; it's contrary to the law."

The defendant now claims on appeal that those comments by the assistant state's attorney were improper because they (1) were not based on evidence in the record, (2) expressed the personal opinion of the assistant state's attorney and (3) appealed to the emotions, passions and prejudices of the jurors.

Even if we were to find that the comments of the assistant state's attorney were improper, the defendant has failed to establish that he was deprived of a fair trial as a result of the comments. All the comments that the defendant alleges were improper related to his claim of self-defense as to the charges of assault in the first degree and attempt to commit murder. The comments were not directed toward the only charge as to which the jury found the defendant guilty, carrying a pistol without a permit. The jury acquitted the defendant of all counts of assault and attempt to commit murder, which indicates that the jury made its finding rationally, on the basis of the evidence, and was not unduly swayed by the remarks of the assistant state's attorney. See *State* v. *Thompson*, supra, 266 Conn. 482.

Furthermore, in his statement to the police, which was in evidence, the defendant admitted that he had the gun and shot the victims with it. There was uncontradicted evidence that the defendant did not have a permit to carry that handgun. The evidence in this case as to the count of carrying a pistol without a permit was not only strong, it was overwhelming.

Finally, the court, in keeping with its responsibility as a minister of justice; *In re Jonathan M.*, 255 Conn. 208, 234, 764 A.2d 739 (2001); properly interrupted the argument of the assistant state's attorney, inquired if the comments were proper and then, sua sponte, gave an effective curative instruction. See *State* v. *Thompson*, supra, 266 Conn. 460. Accordingly, we conclude that the defendant was not deprived of a fair trial as a result of the remarks of the assistant state's attorney.

II

The defendant claims that the court improperly instructed the jury on the charge of carrying a pistol without a permit. The defendant did not object to the court's instructions to the jury and seeks review under *State* v. *Golding*, supra, 213 Conn. 239–40. We will review the defendant's claim because the record is adequate and the claim is of constitutional magnitude. See *State* v. *Koslik*, 80 Conn. App. 746, 760, 837 A.2d 813 (2004).

In its instructions to the jury on the charge of possessing a pistol without a permit, the court stated in relevant part: "Carrying a weapon on a person without a permit is against the law in this state. A . . . person is in violation of the law if he carries any such pistol or revolver upon his person except when such person is within a dwelling or place of business without first obtaining a permit to carry. . . ." The court continued and later charged in relevant part: "Now, a permit may be issued by the issuing authority of the state or local government. . . . But, if one doesn't have a pistol permit, one cannot carry such a weapon or revolver or pistol on their person either in a car or in—on their person. The state must prove beyond a reasonable doubt that the proper permit had not been issued, and, you heard evidence concerning that."

It is the defendant's claim that it is reasonably possible that the jury was misled when the court included in its charge a statement that a pistol cannot be carried on one's person in a car. It is the defendant's claim that by including the reference to the car, the court "added an element of the crime to the charge of carrying a pistol without a permit." We disagree.

"When reviewing the challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's charge is not whether it is as accurate upon legal principles as the opinions of a court of last resort but whether it fairly presents the case to the jury in such a way that injustice is not done to either party under the established rules of law. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . .

"[I]n appeals involving a constitutional question, [the standard is] whether it is reasonably possible that the jury [was] misled. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied to any part of a charge is whether the charge, considered as a whole, presents the case to the jury so that no injustice will result." (Citations omitted; internal quotation marks omitted.) *State* v. *Betances*, 265 Conn. 493, 509–10, 828 A.2d 1248 (2003).

We conclude that it is not reasonably possible that the court's instructions misled the jury. When read in their entirety, the court's instructions were an accurate reflection of the law and were adapted to the evidence in the case. See *State* v. *Davis*, 261 Conn. 553, 563–64, 804 A.2d 781 (2002).

The defendant was charged with carrying a pistol without a permit in violation of § 29-35 (a). Section 29-35 (a) provides in relevant part: "No person shall carry any pistol or revolver upon one's person, except when such person is within the dwelling house or place of business of such person, without a permit to carry the same . . . ." In his statement to the police, which was in evidence, the defendant admitted that he was carrying a pistol without a permit. In the statement, the defendant told the police that he purchased the nine millimeter pistol in Florida and that he did not have a permit for the weapon. Also in the statement, the defendant told the police that on June 3, 2001, he went to the Golden Bamboo Restaurant with that pistol and that while he was in the parking lot, he fired seven to eight gunshots from that pistol, aiming at Buntham Sam and Chandra Sam. He then left the area in a vehicle being driven by his cousin that was stopped by the police. The police testified that in the vehicle they found a nine millimeter handgun, which had been fired in the restaurant parking lot.

The court specifically instructed the jury that an individual is in violation of § 29-35 (a) if that person "carries any such pistol or revolver upon his person except when such person is within a dwelling or place of business, without first obtaining a permit to carry." When read in context, the language that the court incorporated in its charge as to carrying a pistol on one's person in a car instructed the jury, perhaps inartfully, that an individual is in violation of § 29-35 (a) if the individual is carrying a pistol on his person in any place, including a car, other than a dwelling or a place of business, without a permit to carry the pistol. We accordingly conclude that it was not reasonably possible that the jury was misled by the court's instructions.

The judgment is affirmed.

In this opinion the other judges concurred.