# STATE OF CONNECTICUT *v.* MAURIZIO GIORDANO-LANZA
## (AC 23846)

Foti, Flynn and Dupont, Js.

Argued March 26—officially released July 13, 2004

*William B. Westcott*, special public defender, for the appellant (defendant).

*Christine Collyer*, special deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cara F. Eschuk*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FLYNN, J. The defendant, Maurizio Giordano-Lanza, appeals from the judgment of conviction, rendered after a jury trial, of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and sexual assault in the third degree in violation of General Statutes § 53a-72a (a) (1) (A). On appeal, the defendant claims that (1) the trial court improperly criticized defense counsel and incorrectly gave a curative instruction immediately after interrupting counsel's closing argument, and (2) the court's postcharge, supplemental instruction violated the defendant's constitutional right not to testify at a criminal trial by permitting an adverse inference to be drawn from his failure to testify. We conclude that the defendant cannot prevail on the first claim, but reverse the judgment of conviction on the basis of the defendant's second claim.

Before discussing each of the defendant's claims, we note that there are four parts of the court's various instructions to the jury that inform our review of the charge as a whole. The first of the pertinent instructions occurred in the court's preliminary instructions to the jury, in which the court said of the defendant: "He does not have to testify or indeed present any evidence whatsoever. And you are to make nothing of that and decide the case based upon the facts presented to you

in this courtroom. . . . The defendant again has no right—does not have to testify. His right is not to testify if he so desires, and you are to make nothing of that, speculate as to why, but again, decide the case as to the evidence presented to you."

The second relevant instruction occurred during defense counsel's closing argument on this case. Defense counsel argued that "[t]he state wants you to believe this fifty-four year old man, never previously before convicted of a felony, all of a sudden decided on this day he would wake up one day, go to his tenant's house and become a felon, a criminal and do something like this. It is just beyond belief." Later in the argument, defense counsel stated: "I want you to understand that I am representing a fifty-four year old man [who] has no prior felony convictions . . . ." At this time, the court intervened and instructed the jury "to disregard that. There's been no evidence of that. There's no— counsel has a lot of leeway during closing argument. This court is reluctant to interrupt. It's the second time. Totally disregard the word felony. That punishment is not at all a part of your deliberation. Don't even think about."

The third relevant instruction occurred in the principal charge. The court charged: "Now, in this case [the defendant] has chosen not to testify. That's his choice. That's his choice. In this case, as in any case, an accused who chooses not to testify is entitled to no unfavorable inference. You are not to make anything of his failure to testify. He has an absolute right not to testify. And you are to draw no unfavorable inferences from the defendant exercising that constitutional right."

After the general charge, the state sought a curative instruction from the court on the subject of defense counsel's improper statements regarding the defendant's lack of felony convictions. After argument on

the issue, the court gave the following supplemental instruction: "In this case, I remind you that [the defendant] has not testified. The defendant has not testified in this case. An accused person has the option to testify or not to testify at trial. He is under no obligation to testify, and he has *no constitutional right* not to testify, and you must draw no *unreasonable* inferences from the defendant's failure to testify or indeed even speculate to any reasons as you heard earlier in my charge." (Emphasis added.)

I

We first turn to the defendant's claim that the court improperly criticized defense counsel and incorrectly gave a curative instruction immediately after interrupting counsel's argument. The defendant claims that the court erroneously labeled his counsel's argument as improper before the jury and then emphasized this mistake by giving a stand-alone curative instruction on the issue. He maintains that the court improperly barred the defendant from arguing facts that reasonably could be inferred from the lack of evidence. No evidence had been introduced about the defendant's record or lack of record of felony convictions. We conclude that defense counsel improperly commented on facts that were not in evidence. It was well within the court's discretion to limit defense counsel's closing argument and to give a curative instruction to limit what the jury could consider in deliberations.

"As an initial matter, we set forth the applicable standard of review. In general, the scope of final argument lies within the sound discretion of the court . . . subject to appropriate constitutional limitations. . . . It is within the discretion of the trial court to limit the scope of final argument to prevent comment on facts that are not properly in evidence, to prevent the jury from considering matters in the realm of speculation and to

prevent the jury from being influenced by improper matter that might prejudice its deliberations. . . .

"[T]he privilege of counsel in addressing the jury should . . . *never be used as a license to state, or to comment upon, or even to suggest an inference from, facts not in evidence* . . . ." (Emphasis in original; internal quotation marks omitted.) *State* v. *Rios*, 74 Conn. App. 110, 119, 810 A.2d 812 (2002), cert. denied, 262 Conn. 945, 815 A.2d 677 (2003). "Moreover, [a] trial court . . . may caution the jury to disregard improper remarks in order to contain prejudice." (Internal quotation marks omitted.) *State* v. *Faust*, 237 Conn. 454, 475, 678 A.2d 910 (1996). A judge is not an idle bystander in a forensic contest reacting only to objections made, but has the duty to ensure that a fair trial is accorded to all before it. See *State* v. *Bunleut*, 82 Conn. App. 648, 655, 846 A.2d 912 (2004); *State* v. *Reddick*, 33 Conn. App. 311, 335, 635 A.2d 848 (1993), cert. denied, 228 Conn. 924, 638 A.2d 38 (1994). Both the state and the defendant are entitled to a fair trial. "A reviewing court may only disturb the trial court's actions in instances of abuse of this wide discretion." (Internal quotation marks omitted.) *State* v. *Faust*, supra, 475. "We generally accord deference to a court's efforts to eliminate prejudice through a curative instruction." *State* v. *Martin*, 77 Conn. App. 818, 827, 827 A.2d 1 (2003).

Twice during his closing argument, defense counsel informed the jury that the defendant lacked a felony record. The defendant now argues, relying on *State* v. *Ross*, 18 Conn. App. 423, 433, 558 A.2d 1015 (1989), that counsel had a right to emphasize the lack of evidence in the state's case regarding the existence of the defendant's felony convictions. We reject this characterization. *Ross* counsels judicial caution in restricting counsel from commenting on matters that raise reasonable doubt. It does not, however, require the court to allow counsel to suggest inferences that require sup-

porting predicate facts that are not in evidence. There was simply no evidence about a felony record before the jury. Defense counsel improperly attempted to supply such evidence in vouching for the defendant during the closing statement. He stated outright that the defendant did not have a felony record.

The record does not establish that the state had any obligation to introduce affirmative predicate factual evidence about such a record. "The rules governing the admissibility of evidence of a criminal defendant's prior misconduct are well established. As a general rule, evidence of guilt of other crimes is inadmissible to prove that a defendant is guilty of the crime charged against. him. . . . The rationale of this rule is to guard against its use merely to show an evil disposition of an accused, and especially the predisposition to commit the crime with which he is now charged. . . . Evidence of other misconduct, however, may be allowed for the purpose of proving many different things, such as intent, identity, malice, motive or a system of criminal activity . . . or an element of the crime. . . . Such evidence may also be admissible when a defendant testifies and his credibility is in issue." (Citations omitted; internal quotation marks omitted.) *State* v. *Sierra*, 213 Conn. 422, 428–29, 568 A.2d 448 (1990); see also General Statutes § 52-145.[1]

None of these circumstances existed in this case. The defendant did not testify and did not invite evidence of past crimes into the case, and any evidence of past crimes would not have been otherwise admissible. Therefore, the state could not have introduced evidence of prior convictions even if they had existed. The defen-

---

[1] General Statutes § 52-145 provides in relevant part: "(a) A person shall not be disqualified as a witness in any action because of . . . his conviction of crime.

"(b) A person's . . . conviction of crime may be shown for the purpose of affecting his credibility."

dant, however, could have offered evidence of his good character, including a lack of felony record, but chose not to do so. Had he done so, and thus put his character in issue, the state, at its option, could have offered any countervailing evidence of bad character. *State* v. *Zdanis*, 173 Conn. 189, 194, 377 A.2d 275 (1977) ("[e]vidence may not be admitted for the purpose of showing the defendant's bad character unless he has first put his character in issue by presenting evidence of good character"). Defense counsel could not properly comment on the defendant's lack of a felony record when no evidence was admitted regarding the record's existence or nonexistence.

The statements to the jury about the defendant's lack of a felony record resulted in defense counsel improperly vouching for his client's credibility at a time when both the state and the defendant had rested. The state could not have presented evidence of the defendant's bad character. The court properly interrupted defense counsel's improper argument and gave a curative instruction that informed the jury to disregard counsel's improper vouching remarks. Rule 3.4 (5) of the Rules of Professional Conduct, adopted by the judges of the Superior Court, prohibits an attorney at trial from alluding "to any matter that will not be supported by admissible evidence" and further prohibits him from asserting "personal knowledge of facts at issue," unless he has been sworn as a witness. It would be pointless to conduct trials according to established rules of procedure and evidence and to charge juries to base their verdicts only on the evidence, or lack thereof, and then to permit closing arguments to contain unsworn testimony from attorneys to the jury about matters that were not in evidence and for which opposing counsel could not have offered evidence. The court acted responsibly within the discretion vested in it as a minister of justice.

## II

We next review the defendant's second claim. He argues that the court's postcharge, supplemental instruction violated both his right to a no adverse inference instruction under General Statutes § 54-84, and his federal and state constitutional rights not to testify at his criminal trial because the court materially and substantially misstated the nature of the defendant's privilege not to testify in violation of his right to remain silent. We agree and conclude that the combination of the court's incorrect final curative instructions charging that the defendant had no constitutional right not to testify and the court's use of the term "unreasonable," rather than "unfavorable," rises to the level of a constitutional violation because it was reasonably possible that the jury was misled.

The court explained the defendant's right not to testify three times. The first was in a preliminary charge prior to the start of evidence. In it, the court first explained that the defendant had a right not to testify or present any evidence in his defense. It further stated: "The defendant again has no right—does not have to testify. His right is not to testify if he so desires, and you are to make nothing of that, speculate as to why, but again, decide the case as to the evidence presented to you." Next, during the general charge, the jury was instructed: "Now, in this case [the defendant] has chosen not to testify. That's his choice. That's his choice. In this case, as in any case, an accused who chooses not to testify is entitled to no unfavorable inference. You are not to make anything of his failure to testify. He has an absolute right not to testify. And you are to draw no unfavorable inferences from the defendant exercising that constitutional right." The defendant does not challenge any of these instructions on appeal.

After the court had charged the jury, the state requested that the court give a supplemental instruction

on the subject of defense counsel's improper summation comments regarding the defendant's lack of a criminal record. During the curative instruction, the court stated: "In this case, I remind you that [the defendant] has not testified. The defendant has not testified in this case. An accused person has the option to testify or not to testify at trial. He is under no obligation to testify, and he has no constitutional right not to testify, and you must draw no unreasonable inferences from the defendant's failure to testify or indeed even speculate to any reasons as you heard earlier in my charge.

"Now, I also caution you again that arguments are not evidence in this case. In particular, you recall that an argument by counsel regarding whether or not his client had a criminal record. He did not testify. There is no evidence presented to you whether or not the defendant has a criminal record. This argument—as you heard and I explained to you what the court does when objections are sustained. Those answers are not to be considered by you. This argument was improper and you should disregard it completely. And consider only the evidence presented to you through admission in this court in the orderly procedures. You are not to make any assumptions about whether or not the defendant has a criminal record. None. Don't speculate. Don't wonder. It's not before you. It's not in evidence. What's in evidence will be the exhibits and the testimony of the witnesses presented here in the orderly flow in this courtroom."

While the defendant objected to the giving of a supplemental instruction, he did not specifically object to the language stating that he had no constitutional right not to testify and the court's substitution of the word "unreasonable" for "unfavorable," which he now claims was error. Therefore, the defendant asks for review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The record is adequate for review. The

defendant argues that his right not to suffer any adverse inference from his decision not to testify, guaranteed in § 54-84,[2] article first, § 8, of the Connecticut constitution and the fifth amendment to the United States constitution, was violated. The defendant's claim is of constitutional magnitude alleging the violation of a fundamental right. We therefore review the claim.

"Under prong three of *Golding*, a challenged jury instruction constitutes a clear constitutional violation that [unmistakably] deprives a defendant of a fair trial if it is found reasonably possible that the jury was misled by the court's instruction." (Internal quotation marks omitted.) *State* v. *Lopes*, 78 Conn. App. 264, 268, 826 A.2d 1238, cert. denied, 266 Conn. 902, 832 A.2d 66 (2003). "The standard of review for constitutional claims of improper jury instructions is well settled. In determining whether it was . . . reasonably possible that the jury was misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding [it] to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge. . . . The test to be applied . . . is whether the charge, considered as a whole, presents the case to the jury so that

[2] Although we observe that the defendant's claim under § 54-84 appears to be statutory rather than constitutional, our Supreme Court has remarked on the connection between § 54-84 and the fundamental right not to testify. It stated: "As a preliminary matter, we note that we have repeatedly held that a claim of trial court noncompliance with § 54-84 (b) is reviewable on appeal even though a defendant, as in this case, did not at trial except to the charge as given. . . . As we have previously explained, noncompliance with § 54-84 (b) is plain error because the statute serves to effectuate the fundamental right of a defendant not to testify in his criminal trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Yurch*, 229 Conn. 516, 524, 641 A.2d 1387, cert. denied, 513 U.S. 965, 115 S. Ct. 430, 130 L. Ed. 2d 343 (1994). Therefore, this claim is before this court properly.

no injustice will result. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper." (Internal quotation marks omitted.) *State* v. *Jarrett*, 82 Conn. App. 489, 493, 845 A.2d 476, cert. denied, 269 Conn. 911, 852 A.2d 741 (2004).

"The fifth amendment to the United States constitution provides that no person 'shall be compelled in any criminal case to be a witness against himself.' That provision acts as a restraint upon the individual states . . . . *Malloy* v. *Hogan*, 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964). Article first, § 8 of the Connecticut constitution affords criminal defendants a similar protection in language at least as broad as its federal counterpart. That section, which sets forth the rights of accused persons in criminal prosecutions, provides that '[n]o person shall be compelled to give evidence against himself . . . .' " D. Borden & L. Orland, 5 Connecticut Practice Series, Criminal Jury Instructions (3d Ed. 2001) § 3.7, p. 207. Specifically, in interpreting the United States constitution, the United States Supreme Court, in *Carter* v. *Kentucky*, 450 U.S. 288, 300, 101 S. Ct. 1112, 67 L. Ed. 2d 241 (1981), stated: "The principles enunciated in our cases construing this privilege, against both statutory and constitutional backdrops, lead unmistakably to the conclusion that the Fifth Amendment requires that a criminal trial judge must give a no-adverse-inference jury instruction when requested by a defendant to do so." (Internal quotation marks omitted.) Id. This instruction "is essential to the full and free exercise of the fifth amendment right against self-incrimination and to the system of justice that it is designed to uphold." D. Borden & L. Orland, supra, § 3.7, p. 207. In addition, our General Statutes require that the instruction be given. General Statutes § 54-84. The statute expressly provides in relevant part: "Unless the accused requests otherwise, the court shall

instruct the jury that they may draw no unfavorable inferences from the accused's failure to testify. . . ." General Statutes § 54-84 (b). The defendant contends he was harmed by the court's misstatement that he had no constitutional right not to testify and that the jury only could not draw "unreasonable" inferences.

As noted in our recitation of the challenged instruction, the court thrice charged the jury with respect to the defendant's right not to testify. Although in its principal charge the court used the statutorily required term "unfavorable" twice, it substituted the word "unreasonable" in its final curative instruction taken after the state's exception on other grounds. We recognize that the busy trial judge has many converging obligations when the charge to the jury is complete. Not only must the judge listen to counsel's exceptions to the charge and determine if any recharge is necessary, but the judge must ensure that only the full exhibits in the case are delivered to the jurors for use in deliberation, all at a time when the jury usually is anxious to commence its important work. Those kinds of trial pressures can result in a slip of the tongue where a judge intending one expression mistakenly substitutes another. Our focus is not on whether the claimed error results from such a slip or not, but on whether it was reasonably possible that the jury was misled.

Neither the state nor the defendant took exception to the specific language used in the court's curative instruction. Defense counsel cannot make something unconstitutional by objecting, nor can he render something constitutional by failing to object. Under *Golding* review, which, by its terms, accords judicial review to unpreserved claims, we must determine what the constitution requires, which is not dependent on whether someone objected. Therefore, although we note that the defendant did not bring the incorrect statement to the court's attention immediately following the

court's charge when there was time for the court to correct it, the court's misstatement cannot be held to be a harmless slip of the tongue because of the severity of the misstatement and its placement as a curative, stand-alone instruction given just before jury deliberations commenced. The court incorrectly told the jury that the defendant had "no constitutional right not to testify" and only that "no unreasonable inferences" could be drawn from the defendant's silence. Our analysis warrants more than mere arithmetic to ascertain if the court stated the law correctly more times than it stated it incorrectly. We must look at the timing and placement of the incorrect instruction. In this case, it was the incorrect statement that the jury heard last, in a stand-alone, curative instruction, given in response to the state's exception before jury deliberations commenced. We look to the words of Chief Justice Maltbie, that giant of Connecticut jurisprudence, for guidance in our determination. "[G]reater weight is likely to have been given by the jury to a later statement than to an earlier one; and this principle operates at times to cure an error in the earlier statement, but on the other hand, if the later instruction is erroneous, it is apt to result in a new trial. In fact error in a later statement has frequently been held not to have been cured by an earlier correct charge." W. Maltbie, Connecticut Appellate Procedure (2d Ed. 1957) § 95, p. 114.

We repeatedly have stated that "[i]n the absence of an indication to the contrary, the jury is presumed to have followed . . . curative instructions." *State* v. *Velasco*, 253 Conn. 210, 246, 751 A.2d 800 (2000); see also *State* v. *McIntyre*, 250 Conn. 526, 533, 737 A.2d 392 (1999); *State* v. *Correa*, 241 Conn. 322, 353, 696 A.2d 944 (1997). In addition, our appellate courts have "long noted the magnitude of the effect of the last words heard by a jury." *State* v. *Watson*, 251 Conn. 220, 247, 740 A.2d 832 (1999); see also *State* v. *Gallivan*, 75 Conn.

326, 333–34, 53 A. 731 (1902) (" '[w]here the court . . . returns to a subject considered [earlier] and gives additional instructions in regard to it, the jury may naturally regard them, so far as they may state a new and different rule, to be intended to qualify, as a last word, that which had been previously said' ").

In *State* v. *Vega,* 36 Conn. App. 41, 47, 646 A.2d 957 (1994), "the trial court's final instruction failed to convey the substantive meaning of [§ 54-84] that the jury could draw no unfavorable inferences from the defendant's failure to testify. The [instruction which substituted the word unfair for unfavorable] suggested that the jury could draw a fair or just, although unfavorable or adverse, inference from the defendant's failure to testify." See *State* v. *Tatem,* 194 Conn. 594, 600, 483 A.2d 1087 (1984). Here, as well, the court's substitution of the word unreasonable for unfavorable had the same effect. It is not unreasonable to draw an inference that a defendant is guilty from his failure to testify. In fact, our own Supreme Court approved of drawing that kind of unfavorable, but nonetheless reasonable inference for years.[3] See *State* v. *Branham,* 171 Conn. 12, 18, 368 A.2d 63 (1976) ("privilege [of a defendant] of refraining from testifying, if he so elect[s], does not protect him from any unfavorable inference which may be drawn by his triers from his exercise of the privilege" [internal quotation marks omitted]); *State* v. *Pundy,* 147 Conn. 7, 12, 156 A.2d 193 (1959) (if state made out prima facie case against defendant, court in deciding guilt was

[3] This trend to allow an adverse inference to be drawn was curtailed when subsection (b) was added to § 54-84 in 1977. The need for this addition and its importance is illustrated by the Senate debate on its adoption. Senator Douglas T. Putnam questioned the need for the statute in light of both state and federal constitutions. 20 S. Proc., Pt. 5, 1977 Sess., p. 2068. Senator Salvatore C. DePiano, then the senior senator from Bridgeport and chairman of the judiciary committee, opined that the language was necessary because some courts had misinterpreted the constitution. Id., p. 2068.

entitled to take into consideration fact that defendant did not testify); *State* v. *Del Vecchio*, 145 Conn. 549, 551, 145 A.2d 199 (1958) (if state made out prima facie case of guilt, court could draw adverse inference from defendant's failure to testify). The problem with permitting such an unfavorable inference to be made against the defendant is that the United States constitution, as interpreted by *Kentucky* v. *Carter*, supra, 450 U.S. 300, prohibits the jury from drawing such an adverse inference. Given the time and place of the challenged instruction, it would be illogical to now say that the jury must have ignored the judge's directives in such an important curative instruction, given to the jury directly before deliberations began. Having reviewed the charge as a whole, we conclude that it was reasonably possible that the jury was misled, and we cannot say that the instruction was presented to the jury so that no injustice resulted.

Finally, the defendant's claim satisfies the fourth prong of *Golding* because the state has failed to demonstrate harmlessness of the constitutional violation beyond a reasonable doubt. See *State* v. *Golding*, supra, 213 Conn. 240. The court inaccurately instructed on the right not to testify. The instructions stated that the defendant did not have such a constitutional right and restricted the jury only from drawing unreasonable, rather than unfavorable, inferences. While the court did state that the jury should not "speculate to any reasons as you heard earlier in my charge," this qualifying language was not clear enough to mitigate the court's incorrect instruction. See *State* v. *Yurch*, 229 Conn. 516, 524, 641 A.2d 1387 (court's error was harmless because court conveyed later in charge that jury was not permitted to draw adverse but reasonable inference from defendant's failure to testify), cert. denied, 513 U.S. 965, 115

S. Ct. 430, 130 L. Ed. 2d 343 (1994).[4] In stating that the jury must not draw any unreasonable inferences or speculate as to any reasons as had been heard earlier in the charge, the court may have been asserting that the jury must follow the earlier instruction or that the jury should disregard the earlier remarks. It is not clear. We conclude that it is reasonably possible that the jury was misled by the court's charge and this improper instruction has not been proven by the state to be harmless beyond a reasonable doubt.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

---

[4] The instruction in *Yurch* was not a final curative instruction. Furthermore, in *Yurch*, as opposed to the challenged final curative instruction we are reviewing in the present case, the improper language was so qualified that the jury could not have drawn an adverse inference. "Referring to the defendant's failure to testify, the trial court stated immediately after the erroneous language: 'You must not permit such a fact to weigh in the slightest degree against the defendant. Nor should it enter your discussions or deliberations.' " *State* v. *Yurch,* supra, 229 Conn. 523–24.